[Cite as *State v. Rousculp*, 2014-Ohio-4715.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :               C.A. CASE NO.    2013 CA 58

v.                                               :               T.C. NO.    13CR195

PHILLIP P. ROUSCULP                              :               (Criminal appeal from
                                                                 Common Pleas Court)

    Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____24th____ day of ____October____, 2014.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

MARIA L. RABOLD, Atty. Reg. No. 0089080, 443 E. Central Avenue, Miamisburg, Ohio 45342
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

    **{¶ 1}**    Phillip P. Rousculp pled guilty to aggravated arson, in violation of R.C.

2909.02(A)(2), a second-degree felony. In exchange for the plea, the State dismissed a charge of aggravated arson, in violation of R.C. 2909.02(A)(1), a first-degree felony, and a complicity to tampering with evidence charge. The trial court sentenced him to six years in prison and ordered him to pay a fine of $1,000, restitution in the amount of $516, and court costs. Rousculp was notified that he would be subject to lifetime registration as an arson offender.

{¶ 2} Rousculp appeals from his conviction, challenging the trial court's sentence and claiming that his attorney rendered ineffective assistance. For the following reasons, the trial court's judgment will be affirmed.

## I. Erroneous and Unreasonable Sentence

{¶ 3} Rousculp's first assignment of error states: "The trial court erred and abused its discretion by imposing an unreasonable and disproportionately harsh sentence."

{¶ 4} In *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.), we held that we would no longer use an abuse-of-discretion standard in reviewing a felony sentence, but would apply the standard of review set forth in R.C. 2953.08(G)(2).[1] Under this statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is

---

[1] Since then, several opinions from this court have expressed reservations about whether that decision in *Rodeffer* is correct. *See*, *e.g.*, *State v. Garcia*, 2d Dist. Greene No. 2013-CA-51, 2014-Ohio-1538, ¶ 9, fn.1; *State v. Dover*, 2d Dist. Clark No. 2013-CA-58, 2014-Ohio-2303, ¶ 23; *State v. Johnson*, 2d Dist. Clark No. 2013-CA-85, 2014-Ohio-2308, ¶ 9, fn.1; *State v. Byrd*, 2d Dist. Montgomery No. 25842, 2014-Ohio-2553, ¶ 44; *State v. Collins*, 2d Dist. Montgomery No. 25874, 2014-Ohio-2443, ¶ 21, fn. 1.

contrary to law. *Rodeffer* stated that "[a]lthough *[State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124] no longer provides the framework for reviewing felony sentences, it does provide * * * adequate guidance for determining whether a sentence is clearly and convincingly contrary to law. * * * According to *Kalish*, a sentence is not contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R.C. 2929.12." (Citations omitted) *Rodeffer* at ¶ 32.

{¶ 5} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 6} R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or

both." *Id*. R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 7} R.C. 2929.12(B) sets forth nine factors indicating an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record and "whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the offense or offenses."

{¶ 8} At sentencing, the trial court heard statements from defense counsel, the defendant, one of the complainants, and the prosecutor. According to the prosecutor, during the night of May 11-12, 2013, while intoxicated, Rousculp got into a fight with the complainants about harassment a family member was experiencing at work. Rousculp was arrested and taken to jail. After he was released on bail, Rousculp went to the complainants' home and set their shed on fire; the shed was located between 6 and 18 inches from the trailer in which the complainants lived. The heat from the fire melted the side of the trailer and smoke entered the trailer. The prosecutor stated that, "but for the grace of

God, I'm not sitting here telling you about five dead bodies that were found in a trailer on May 12th, 2013, dying from smoke inhalation or from the fire itself." The State recommended a prison sentence, noting that Rousculp had committed the offense while on community control, that he had a history of criminal convictions, that he had not responded favorably to community control imposed by other courts, and that Rousculp had not shown genuine remorse for his conduct. The State argued that the victims had suffered psychological and economic harm, that a prison sentence was necessary to punish Rousculp and to protect the public, and that a non-prison sentence would demean the seriousness of the offense.

{¶ 9} One of the complainants gave a brief statement, telling the court that there were actually six people in the residence at the time of the fire and that the fire was located within four feet of the propane tank outside her children's bedroom. She also emphasized that the offense occurred after Rousculp "bonded out" and that this was a premeditated crime.

{¶ 10} Speaking on Rousculp's behalf, defense counsel stated that Rousculp was cooperative with the presentence investigator and that Rousculp has shown and feels genuine remorse. Counsel stated that Rousculp now understands that he has issues with anger and alcohol, which affected his judgment in this matter. Counsel also stated Rousculp believed the fire was out when he left the property, but the fact that he started the fire "weighs heavily on him." Counsel told the court that Rousculp anticipated a prison sentence, but requested that the court consider a minimum sentence. Upon questioning from the court, counsel confirmed that Rousculp was on community control in Clark County at the time of the

offense.

{¶ 11} Rousculp read a prepared statement to the court. He expressed his remorse and apologized for his actions.

{¶ 12} The trial court questioned Rousculp about the events on May 12, 2013. Rousculp acknowledged that he had gotten into a fight with one of the residents at the home and that he was charged and ultimately convicted of assault arising out of that altercation. Defense counsel and the prosecutor indicated that the assault occurred at approximately 10:30 p.m. on May 11, that Rousculp was arrested at approximately midnight, that he was released at 3:50 a.m. on May 12, and that the fire department was dispatched at 5:53 a.m. The court asked Rousculp if he had been convicted six times for OVI; Rousculp responded that it was four times. The court discussed with Rousculp the fact that he had called his wife and asked her to wash the clothes he was wearing when he started the fire.

{¶ 13} In imposing sentence, the trial court expressly stated that it had considered the purposes and principles of felony sentencing, and it noted the presumption of a prison sentence for a second-degree felony. It found that a community control sanction would not adequately punish Rousculp and protect the public, and the court made specific findings under R.C. 2929.12 regarding the seriousness of the offense and Rousculp's likelihood of recidivism. The court noted that Rousculp had no military service. The court sentenced Rousculp to six years in prison, which was within the sentencing range for a felony of the second degree. R.C. 2929.14(A)(2).

{¶ 14} Rousculp asserts that the trial court abused its discretion when it imposed a six-year sentence. He states that his prior record consisted of four (not six) convictions for

operating a vehicle while under the influence of drugs or alcohol and that the trial court failed to consider necessary factors regarding recidivism and seriousness of the offense.

{¶ 15} First, Rousculp argues that the trial court failed to consider the altercation between Rousculp and the complainants as a factor that would lessen the seriousness of the offense. Rousculp argues that the prior altercation constituted provocation for his actions and should be considered a mitigating factor. Rousculp also cites to his counsel's statement that Rousculp thought the fire was out.

{¶ 16} The trial court expressly found that there were no factors that indicated that Rousculp's conduct was less serious than normally constituting the offense. R.C. 2929.12(C). The trial court did consider the altercation between Rousculp and the complainants that occurred several hours before the arson, but the court considered the altercation and Rousculp's decision to set the fire upon his release from jail to be evidence of premeditation, not mitigation. We find no error in the trial court's interpretation of the events. Nor was the trial court required to believe that Rousculp believed the fire was out when he left the scene.

{¶ 17} Moreover, we find no fault with the trial court's conclusion that there were several factors that indicated that Rousculp's conduct was more serious than that normally constituting the offense. The court reasonably found that the complainants suffered serious psychological and economic harm. In addition, the trial court considered, as "additional non-listed sentencing factors," that Rousculp's conduct was premeditated, that the shed was close to the trailer, and that he caused damage to the trailer, which was occupied.

{¶ 18} Second, Rousculp argues that the trial court erred in failing to find any

factors establishing that he was less likely to commit future crimes. Rousculp states that the trial court should have considered that he had not been charged with any crimes for four years and that he was remorseful.

{¶ 19} The factors indicating that an offender is not likely to commit future crimes include that the offender shows genuine remorse for the offense and that, prior to committing the offense, the offender had led a law-abiding life for a significant number of years. R.C. 2929.12(E)(3) and (5). Rousculp expressed remorse for his conduct at sentencing, but the trial court found that his post-offense conduct reflected otherwise. Specifically, the trial court found that, when the offense occurred, Rousculp had attempted to cover up the crime by asking his wife to wash his clothes before fire investigators got to their house. In addition, there was evidence that Rousculp had multiple prior convictions for OVI, assault, and other misdemeanor offenses, and that he had assaulted a police officer (a fourth-degree felony) in 2009, for which he was on community control in May 2013.

{¶ 20} The trial court found, and the record supports, that the factors indicating that Rousculp was likely to commit future offenses outweighed any factors to the contrary. As stated above, the trial court reasonably determined that Rousculp did not show genuine remorse for the offense, and he was on community control for assaulting a police officer at the time of the offense. *See* R.C. 2929.12(D)(1) and (5). In addition to the 2009 felony assault, Rousculp had six[2] prior OVI convictions, two prior convictions for disorderly conduct, two prior misdemeanor assault convictions, as well as misdemeanor convictions for "hit/skip", menacing, domestic violence, and telecommunication harassment. Thus, there

---

[2] *See* ¶ 27, *infra.*

was evidence that Rousculp had a history of criminal convictions. R.C. 2929.12(D)(2). Rousculp reported during the presentence investigation that he had received alcohol treatment at West Central in 2008 and attends AA meetings, but he acknowledged at the sentencing hearing that he was drunk both when he assaulted the police officer and when he committed the aggravated arson at issue. The record supports a conclusion that Rousculp has a pattern of alcohol abuse related to the offense, but has refused to acknowledge that he has demonstrated that pattern. R.C. 2929.12(D)(4).

**{¶ 21}** The trial court did not perfunctorily address the statutory mandates, but evidenced a consideration of them. The trial court's sentence of six years was not clearly and convincingly contrary to law, nor was it an abuse of discretion. The first assignment of error is overruled.

## II. Ineffective Assistance of Counsel

**{¶ 22}** Rousculp's second assignment of error states: "The appellant was provided ineffective assistance of counsel."

**{¶ 23}** To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 24} Rousculp claims that his trial counsel acted deficiently by failing to review the PSI with Rousculp prior to sentencing so that the number of OVI convictions reported in the presentence investigation could be corrected. Rousculp states that he was prejudiced by the inconsistency between the number of OVI convictions reported and the actual number of convictions because the trial court relied on these past convictions in imposing sentence.

{¶ 25} Upon review of the record, we find no basis to conclude that Rousculp was prejudiced by his counsel's alleged failure to review the PSI with Rousculp prior to sentencing. During the sentencing hearing, the trial court asked Rousculp about his OVI convictions, as follows:

Q: You've been previously convicted of six OVI offenses?

A: Six? No, no. It would be four.

Q: I have one in April of '97 in Clark County. One in October of '97 in Champaign County. One in March of '98 in Clark County. One in May of '98 in Champaign County. And one in January of '02 in Clark County. And then one in February of '08 in Champaign County.

A: No. My fourth one I was convicted, the last one was in Champaign County.

Q: Was that a felony conviction?

A: No. They said next time would be – in there would be.

Q: Whether it's four or six, you and alcohol aren't a good mix are they?

A: No, sir.

Q: Were you under the influence when you assaulted the police officer in '09?

A: Yes, sir.

The record thus reflects that Rousculp had an opportunity to discuss his prior criminal record with the court, and that the trial court was aware that Rousculp disputed that he had six, as opposed to four, prior OVI convictions.

{¶ 26} The court did not reference the specific number of OVI convictions when imposing sentence. Rather, the trial court emphasized that Rousculp had a history of criminal convictions, that he had not responded favorably to community control sanctions previously imposed, and that he had "demonstrated a pattern of alcohol abuse that is related to the offense and refused to acknowledge that or refuses treatment." The court noted that Rousculp was on community control for a past offense of violence when he committed the aggravated arson, and that his conduct demonstrated that he was "seeking revenge and a cover-up." The court further stated that the arson "was alcohol related after the Defendant had been on community control for * * * past alcohol related offenses [which] makes the Court conclude that these are more serious conduct."

{¶ 27} We find no basis from the record to conclude that the discrepancy between the number of OVI convictions had any bearing on the trial court's sentence; in fact, the trial court specifically commented that "whether it's four or six" made no difference. Accordingly, Rousculp has not demonstrated that he was prejudiced by his trial court's failure to review the PSI with him prior to sentencing.

{¶ 28} Rousculp's second assignment of error is overruled

III. Conclusion

{¶ 29} The trial court's judgment will be affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurring:

{¶ 30}  Although I agree that Rousculp's sentence is not clearly and convincingly contrary to law, nor is it an abuse of discretion, I write separately only to emphasize that neither four nor six convictions for OMVI are documented in the PSI report.  The PSI reflects six arrests for OMVI (not six convictions as the majority states at paragraph 20). Only one OMVI indicates a disposition, however, the dispositional record thereof does not indicate if the OMVI was reduced.  The remaining five OMVI(s) list no dispositional history, hence I would not conclude that there are 6 OMVI convictions.

{¶ 31}  Nevertheless, Rousculp admitted to four OMVI convictions, thus I see no error given the court's statement " four or six, you and alcohol aren't a good mix. . ."  In my view, the important lesson of this case is absent Rousculp's admission to four OMVI(s), the case would be remanded for resentencing to allow a full development of Rousculp's OMVI history.  A criminal defendant is entitled to a PSI which includes dispositions, not just arrests.[3]  The trial court should require no less in order to accurately assess recidivism and the appropriate sentence.

. . . . . . . . . .

Copies mailed to:

---

[3]The arrests were local and in a neighboring county, hence dispositions should be readily available, unlike some out-of-state records which may prove difficult to obtain expeditiously.

Jane A. Napier
Maria L. Rabold
Hon. Nick A. Selvaggio